**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | **Chapter 7** |
| | : | |
| **ADENEKAN OLA-OLUWA** | : | |
| **ADESANYA & AFOLUSO** | : | |
| **ADERONKE ADESANYA,** | : | |
| | : | **Bankruptcy No. 18-17260-AMC** |
| **DEBTORS** | : | |
| | : | |
| | : | |
| **NOVARTIS PHARMACEUTICALS** | : | |
| **CORP.,** | : | |
| | : | |
| **PLAINTIFF** | : | |
| | : | **Adv. Proc. No. 19-00124-AMC** |
| **V.** | : | |
| | : | |
| **ADENEKAN OLA-OLUWA** | : | |
| **ADESANYA & AFOLUSO** | : | |
| **ADERONKE ADESANYA,** | : | |
| | : | |
| **DEFENDANTS** | : | |

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

### I.    INTRODUCTION

In June 2017, the plaintiff, Novartis Pharmaceuticals Corp. ("Novartis"), obtained a

prepetition judgment ("Judgment") in the United States District Court for the District of New

Jersey ("District Court") against the debtors, Afoluso Adesanya ("Afoluso"), who was a former

employee of Novartis, and her husband, Adenekan Adesanya ("Adenekan," collectively with

Afoluso, "Debtors"), for fraud in connection with an employment application and resume

submitted to Novartis by Afoluso; breach of contract in connection with a relocation agreement

between Afoluso and Novartis ("Relocation Agreement"); Afoluso's breach of contract in

1

connection with Novartis's annual employee incentive program; Afoluso's breach of the duty of

loyalty to Novartis inherent in her employment contract as well as Novartis's Conflict of Interest

Policy; sanctions issued against Afoluso for discovery misconduct and pursuing baseless claims

against Novartis; and sanctions issued against Adenekan for discovery misconduct.[1]

In this adversary proceeding, Novartis seeks to have the Judgment declared

nondischargeable pursuant to § 523(a)(2)(A). Accordingly, Novartis has moved for summary

judgment on the basis that the District Court findings in support of the Judgment, as well as

certain admissions by the Debtors, establish that there is no genuine dispute that the Judgment is

nondischargeable pursuant to § 523(a)(2)(A). The Debtors, who are *pro se*, have responded with

their own cross motion for summary judgment.

For reasons more fully described below, the Court will grant Novartis's summary

judgment motion in part and deny it in part, and will similarly grant the Debtors' cross motion

for summary judgment in part and deny it in part, finding that: (1) there is no genuine dispute

that § 523(a)(2)(A), as a matter of law, would not render nondischargeable the portions of the

Judgment attributable to fraud on Afoluso's job application and the sanctions award against

Adenekan; (2) a genuine dispute of material fact remains regarding Afoluso's state of mind in

breaching the Relocation Agreement and Novartis's reliance on her representations made in

connection with that agreement; (3) a genuine dispute of material fact remains regarding

Afoluso's state of mind in breaching Novartis's annual employee incentive program and the duty

of loyalty and Conflict of Interest Policy; and (4) the Court cannot make a nondischargeability

determination with respect to sanctions against Afoluso until it determines which portions of the

underlying Judgment are nondischargeable, if any.

---

[1] Since this case involves discussion of a wife and husband with the same last name, the Court uses their first names
for ease of reference, intending neither disrespect nor any indication of familiarity.

The Court's conclusion does not impact Novartis's ability to attempt to amend its
complaint pursuant to Fed. R. Civ. P. 15 ("Rule 15"), applicable to bankruptcy proceedings
through Fed. R. Bankr. P. 7015, to include any other counts that it may consider applicable, such
as § 523(a)(2)(B) in connection with the portion of the Judgment attributable to fraud on
Afoluso's job application, and § 523(a)(6) in connection with the portion of the Judgment
attributable to the sanctions award against Adenekan.

## II.    FACTUAL BACKGROUND

On September 19, 2013, after being terminated from her employment with Novartis,
Afoluso initiated an action in the District Court against Novartis alleging claims for
discrimination and retaliation under state and federal law ("District Court Action"). Op. 5-6,
Aug. 15, 2016 ("Aug. 2016 Op."); Debtors' Resp. to Nov. St. Uncontested Mat. Facts ¶ 5.

On May 27, 2015, Novartis filed several counterclaims against Afoluso, including fraud
on Afoluso's employment application and resume ("Count I"), fraud in connection with the
Relocation Agreement entered into between Novartis and Afoluso ("Count II"), breach of the
Relocation Agreement ("Count III"), breach of Novartis's Annual Incentive Program ("AIP")
("Count IV"), breach of the duty of good faith and fair dealing ("Count V"), and breach of the
duty of loyalty and Novartis's Conflict of Interest Policy ("Conflicts Policy") ("Count VIII")
(collectively, "Counterclaims").[2] Aug. 2016 Op. 6; Compl. Ex. A; Debtors' Resp. to Nov. St.
Uncontested Mat. Facts ¶ 6.

After a discovery period which the District Court described as "contentious" and "marked
by delay," Novartis filed an omnibus motion for sanctions and summary judgment, seeking, in
relevant part, judgment in favor of Novartis on the Counterclaims; dismissal of Afoluso's claims

---

[2] Novartis had also brought counterclaims for unjust enrichment ("Count VI") and misappropriation of confidential
proprietary information ("Count VII"), which are not relevant to this proceeding. Aug. 2016 Op. 6; Compl. Ex. A.

as a sanction for discovery obstruction, deceit, fraud, and the pursuit of baseless litigation; and

sanctions against Adenekan on account of his discovery misconduct. Aug. 2016 Op. 1, 6, 9, 13.

Afoluso filed an opposition, which contained an opposition brief from Adenekan, as well as her

own cross motion for summary judgment on the Counterclaims. *Id.* at 1, 9.

In an opinion issued on August 15, 2016 ("First District Court Opinion"), the District

Court, in relevant part, granted Novartis's summary judgment motion in connection with Counts

I, III,[3] IV, V, and VIII; sanctioned Afoluso by dismissing her claims; and sanctioned Adenekan.

*Id.* at 2.

In the First District Court Opinion, the District Court found that on March 3, 2010,

Novartis hired Afoluso as a Brand Safety Leader in its Oncology Business Unit when Afoluso

signed Novartis's employment offer and that, unbeknownst to Novartis, Afoluso had

misrepresented her employment history on her job application, inflating prior salaries, creating

"phony" supervisors, and concealing that she had been involuntarily terminated from a prior

position. *Id.* at 2, 20. The District Court further found that Novartis had relied on these

representations in deciding to hire Afoluso and in determining her compensation. *Id.* at 2.

According to the District Court's findings, Afoluso's employment was predicated on her

relocating from her home in Pennsylvania to a location closer to Novartis's offices in New

Jersey. *Id.* at 4. To help facilitate her move, Novartis gave Afoluso approximately $26,000 in

relocation funds after Afoluso executed a Relocation Agreement with Novartis on March 3,

2010. *Id.* at 4, 20. However, as the District Court noted, she never relocated and, in fact, worked

---

[3] Because the District Court found that "Counts Two and Three share the same core essential facts," the District
Court deemed "Count Two to be part of Count Three" and, accordingly, dismissed as moot Novartis's motion for
summary judgment and Afoluso's cross motion for summary judgment as to Count Two. Aug. 2016 Op. 19 n.18.

4

almost exclusively from her home in Pennsylvania for the entirety of her tenure at Novartis. *Id.*

at 4, 20.

As further noted by the District Court, Novartis's employee agreement ("Employee

Agreement") and Conflicts Policy "precluded Plaintiff from holding outside employment during

her tenure with Novartis that would interfere with her obligations to the company." *Id.* at 3. Also

pursuant to the Employee Agreement, Afoluso "agreed to 'devote [her] best efforts and full

business loyalty to [her] employment with Novartis' and not to hold 'other employment or

engage in any other business which may adversely affect [her] ability to perform [her] job

responsibilities at Novartis.'" *Id.*

Furthermore, the District Court explained that the Conflicts Policy prohibited

employees from: 1) holding a 'second job with or provid[ing] any services to a
competitor of' Novartis; 2) owning directly or indirectly 'any interest in any Company
which competes, or does business, with' Novartis; and 3) 'engag[ing] in outside
employment or other activity which encroaches on time or attention that should be
devoted to [Novartis's] affairs, otherwise detracts from your ability to perform your
responsibilities' or deprives Novartis of 'your full loyalty.' *Id.*

Finally, the District Court noted that the AIP made bonuses available to Novartis

employees subject to compliance with Novartis's rules and policies. *Id.*

Notably, the District Court determined that, unbeknownst to Novartis, from the very start

of her employment and throughout her tenure with Novartis, Afoluso and her husband jointly

owned Global Drug Safety and Surveillance, Inc. a/k/a LaRon Pharma Inc. ("LaRon"), a sub-S

corporation engaged in licensing, developing, and marketing prescription drugs of other

pharmaceutical companies for four therapeutic groups, including oncology. *Id.* By virtue of her

50% ownership interest in this specialty pharmaceutical company, the District Court concluded

that Afoluso had been in violation of the Employee Agreement, Conflicts Policy, and AIP from

the outset of her employment through her termination. *Id.*

5

Additionally, according to the District Court, in August 2011, unbeknownst to Novartis, Afoluso obtained a position as a drug safety consultant with Biomedical Consulting International, Inc. ("Biomedical"). *Id.* at 4. While working for Biomedical, she provided drug safety services to Auxilium Pharmaceuticals ("Auxilium"). *Id.* Through her work with Auxilium, Afoluso provided drug safety services to direct competitors of Novartis. *Id.* The District Court noted that between 2011 and 2012, Afoluso received $59,189.00 on account of her work for Biomedical and Auxilium. *Id.*

Similarly, the District Court found that in January 2012, unbeknownst to Novartis, Afoluso, using the alias Ron Nuga, M.D., began providing drug safety services to Astellas Pharma Global Development, Inc. ("Astellas"). *Id.* In fact, according to the District Court, between January 2012 and February 2013, Afoluso worked approximately forty hours per week for Astellas and earned approximately $500,000. *Id.* The District Court noted that while Afoluso was billing hundreds of hours for her other consulting jobs, her performance reviews reflected that her limited time in Novartis's offices was negatively impacting her team. *Id.* at 4-5. As a result, Novartis's human resources business partner instructed Afoluso that she would have to come into the office more frequently. *Id.* at 5. When she largely failed to do so, Afoluso was warned in March 2013 that her absences were unacceptable. *Id.* Six months later, Afoluso was terminated. *Id.* The District Court explained that the reason given for her termination was "performance based, predominantly driven about not coming into the office three days a week, which impacted her interactions and collaboration with her close functional team members." *Id.* During her tenure at Novartis, Afoluso earned a total of $1,205,720 in cash compensation, including $210,403 in bonuses under the AIP. *Id.* at 5-6.

In connection with Count I for fraud related to Afoluso's employment application and resume, the District Court concluded that, when applying for a position with Novartis, Afoluso made misrepresentations on her application and resume regarding her last job, her supervisor, and prior salaries; she must have known that she was misstating material aspects of her employment history since she knows her own employment history; she intended Novartis would rely on her misrepresentations in determining whether to hire her; and because she was required to certify the application was correct and acknowledge that falsification would be a ground for immediate dismissal, it was reasonable for Novartis to rely on the accuracy of the information provided by Afoluso. *Id.* at 19. In fact, the District Court found that Novartis did rely on her misrepresentations in her employment application and resume to determine whether to hire her and what compensation to offer. *Id.* It further found that Afoluso's misrepresentations damaged Novartis by causing it to hire a candidate it otherwise would not have hired and pay her more than her experience warranted. *Id.*

Therefore, the District Court concluded that the foregoing findings satisfied all the elements for New Jersey common law fraud, which requires "(1) a material misrepresentation of presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Id.*

In connection with Count III for breach of the Relocation Agreement, the District Court concluded that Afoluso had represented to Novartis that she intended to relocate, accepted approximately $26,000 in relocation funds, and never relocated. *Id.* at 20. Novartis lost the $26,000 it gave Afoluso to move and never received the benefit of having her move closer to the office. *Id.*

7

In connection with Count IV for breach of the AIP, the District Court concluded that

Novartis and Afoluso entered into an employment contract on March 3, 2010 when she signed

Novartis's employment offer; that the terms of her employment were governed by Novartis's

Code of Conduct, Conflicts Policy, and the AIP; and that the bonuses she received through the

AIP were conditioned upon her compliance with Novartis's policies, including the Conflicts

Policy. *Id.* Additionally, the District Court found that by accepting employment with

Biomedical/Auxilium and Astellas, Afoluso violated the Conflicts Policy and breached her

obligations under the AIP, requiring her to return funds paid pursuant to that program. *Id.* at 20-

21.

In connection with Count V for breach of the duty of good faith and fair dealing, the

District Court found that by seeking out additional competing employment during her tenure

with Novartis and failing to disclose her additional employment, Afoluso violated her duty of

good faith and to deal fairly with Novartis, especially by failing to devote her full efforts and

time to her duties at Novartis. *Id.* at 22.

In connection with Count VIII for breach of the duty of loyalty and Conflicts Policy, the

District Court concluded that Afoluso had violated her common law duty of loyalty and the

Conflicts Policy by soliciting and accepting consulting positions with Novartis competitors and

by billing hundreds of hours to them without disclosure to Novartis, resulting in her

impermissibly competing with her employer. *Id.* at 23. Ultimately, the District Court determined

that Novartis was harmed because it had paid Afoluso for a full-time position while she

"siphoned off time she owed Novartis to other activities. As such, Defendant lost the money it

paid her for time she did not commit to the company." *Id.*

8

In ruling on Novartis's motions for sanctions, the First District Court Opinion also made

certain findings regarding Afoluso's and Adenekan's conduct during the District Court Action.

*Id.* at 6-8. Specifically, with regard to Afoluso, the District Court found that

> [p]laintiff provided false and misleading written responses to discovery requests
> and deposition testimony, such as: 1) claiming that her 'sole compensation and
> income during her employment with Defendant came from Defendant;' 2)
> denying that she worked for other entities while working for Novartis; and 3)
> claiming that her interest in LaRon ended in 2009. *Id.* at 6-7 (citations omitted).

In granting Novartis's motion for sanctions against Afoluso, the District Court invoked its

inherent power to sanction litigation abuses such as fraud practiced upon it which sets in motion

an unconscionable scheme interfering with the court's ability to impartially adjudicate a matter.

*Id.* at 9. The District Court also invoked Fed. R. Civ. P. 37/41 for additional authority permitting

the dismissal of claims for failure to cooperate in discovery or comply with discovery orders. *Id.*

at 10. In justifying its decision to dismiss Afoluso's discrimination and retaliation claims, the

District Court found:

> Plaintiff's suit is extraordinary in that it is predicated on a willful, determined
> effort by Plaintiff to deceive Defendant and this Court. Plaintiff misstated her
> employment history, outside consulting, sources of income, business interests and
> even her name when it suited her purpose. This Court also finds that Plaintiff's
> conduct was willful and in bad faith. Her deposition testimony and written
> responses to discovery requests were false…This is not a case of forgetfulness or
> confusion. This is perjury. There is a clear connection between Plaintiff's
> obfuscation and the matters in controversy in this case – namely Plaintiff's
> contractual obligations to Defendant and the basis for her termination. *Id.* at 13-
> 14.

Ultimately, the District Court determined that "[g]iven the brazen manner in which

Plaintiff attempted to mislead defense counsel and manipulate the judicial process, this Court

does not believe that a lesser sanction [than dismissal of her claims] will deter Plaintiff from

future improper conduct." *Id.* at 14.

9

With regard to Adenekan, the District Court noted that during discovery, Adenekan refused to provide documents demanded by subpoena, forcing Novartis to file a motion to compel, which the District Court granted. *Id.* at 7. Subsequently, Adenekan ignored three orders issued by the District Court directing him to provide the requested documents. *Id.* at 7, 15-16. Furthermore, at his deposition, Adenekan gave false testimony. *Id.* at 8, 16. In light of the foregoing, the District Court found that sanctions against Adenekan were warranted. *Id.* at 16.

Subsequently, Novartis filed an application for an award of damages for the Counterclaims as well as for an award of reasonable attorneys' fees and costs incurred in connection with dismissal of Afoluso's claims and Adenekan's discovery misconduct ("Application"). Op. 1, June 5, 2017 ("June 2017 Op."). The Debtors filed an opposition in response. *Id.*

On June 5, 2017, the District Court issued an opinion granting the Application with reductions ("Second District Court Opinion," collectively with First District Court Opinion, "District Court Opinions"). *Id.* at 1. After conducting a comprehensive review of the reasonableness of the requested attorneys' fees and costs, the District Court determined that a total award of $480,754.22 on account of services performed in connection with the dismissal of Afoluso's claims and the motion for sanctions against Adenekan was reasonable. *Id.* at 3, 7, 17, 26. In making this determination, the District Court noted, in relevant part, that with respect to Afoluso, Novartis should be compensated for fees and costs incurred as a result of Afoluso's obfuscation of discovery and her "dogged pursuit of baseless claims and fraud [which] led to the dismissal of the complaint." *Id.* at 8, 11. With respect to Adenekan, the District Court noted "[t]his Opinion focuses on the fees and costs incurred in relation to Mr. Adesanya's false testimony and his failure to comply with Defendant's document demands." *Id.* at 8. The District

10

Court allocated $457,040.22 of the attorneys' fee award against Afoluso and $23,714 of the

attorneys' fee award against Adenekan "for the fees and costs incurred regarding the dismissal of

Plaintiff's claims and sanctions against Mr. Adesanya." *Id.* at 17, 26.

In determining damages for Count I, the District Court awarded $658,788.96 to

compensate Novartis for hiring and paying Afoluso more than her experience warranted based

upon its calculation of the benefit Novartis would have realized had the representations which

induced it to hire Afoluso been true. *Id.* at 19, 22, 26.

In determining damages for Count III, the District Court awarded $26,818.71, the amount

Afoluso received under the Relocation Agreement. *Id.* at 22, 26.

In determining damages for Count IV, the District Court awarded $210,403, representing

full repayment of all bonuses Afoluso received during her employment with Novartis under the

AIP. *Id.* at 22-23, 26. The District Court reasoned that "Plaintiff's bonuses were conditioned

upon her compliance with Novartis's internal rules and policies, including the Conflicts Policy,

and she was in violation of these policies at the outset of her employment," and that "[t]his Court

previously found that Plaintiff was in violation of these policies from the very start of her

employment and breached the AIP by accepting outside employment positions with

Biomedical/Auxilium and Astellas." *Id.* at 22-23.

The District Court did not award any damages on account of Count V, finding that the

conduct which violated the duty of good faith and fair dealing

> comports with the conduct that resulted in Plaintiff's breach of the Relocation
> Agreement (Count Three) and AIP (Count Four). As this Court has already
> awarded damages resulting from Plaintiff's breach of both agreements,
> constructing a damages award for her breach of the implied covenant of good
> faith and fair dealing would impermissibly result in a duplicative damages award.
> *Id.* at 23.

11

Finally, in determining damages for Count VIII, the District Court awarded $497,907.56, representing the "wrongful" profits Afoluso obtained working for Biomedical/Auxilium and Astellas. *Id.* at 24, 26.

Accordingly, on June 21, 2017, the District Court entered judgment against Afoluso in the total amount of $1,850,958.45, consisting of $457,040.22 attributable to attorneys' fees and costs, plus applicable post-judgment interest, and $1,393,918.23 in damages, and against Adenekan in the amount of $23,714, plus applicable post-judgment interest. Nov. Mot. for Summ. J. Ex. A. 60.

Later, after the Judgment was affirmed on appeal by the Third Circuit Court of Appeals, Novartis successfully moved the Judgment to the Court of Common Pleas of Montgomery County, Pennsylvania. Nov. Mot. for Summ. J. Ex. A 86; Nov. St. Uncontested Mat. Facts ¶ 33; Compl./Ans. ¶ 34. The Montgomery County Court of Common Pleas' denial of Afoluso and Adenekan's challenge to the entry of the Judgment was affirmed on appeal by the Pennsylvania Superior Court. Nov. Mot. for Summ. J. Ex. A 106; Nov. St. Uncontested Mat. Facts ¶ 34; Compl./Ans. ¶ 35.

On November 2, 2018, Afoluso and Adenekan filed a joint chapter 13 petition. Case No. 18-17260 ECF No. ("ECF") 1. Their case was subsequently converted to a chapter 7 case on February 26, 2019. *Id.* at ECF 34. On June 7, 2019, Novartis filed the instant adversary complaint ("Adversary Complaint") seeking to have the Judgment rendered nondischargeable pursuant to § 523(a)(2)(A). Case No. 19-124 ECF 1 Compl. ¶ 38. The section of the Adversary Complaint entitled "Count I" states:

> [a]ccording to the United States Bankruptcy Code...certain debts are excepted from discharge. At Section [sic] 523 of the Code, the following items are expressly stated as being exempt from a discharge: '(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an

12

individual debtor from any debt – (2) for money, property, services, or an
extension, renewal, or refinancing of credit, to the extent obtained by – (A) false
pretenses, a false representation, or actual fraud, other than a statement respecting
the debtor's or an insider's financial condition…' Compl. ¶ 38.

The Adversary Complaint, to which copies of the District Court Opinions are attached as

exhibits, then goes on to state that "[i]n this instance, the findings and conclusions of the United

States District Court for the District of New Jersey constitute final and binding conclusions of

law that Defendants engaged in actual fraud." *Id.* at ¶ 39, Ex. B.

On July 8, 2019, the Debtors filed an answer to the Adversary Complaint in which they

state, in relevant part, "[i]tems 6-35 are conclusory statements that do not require a response."

Case No. 19-124 ECF 6 Ans. ¶ 6. However, items 6-35 of the Adversary Complaint make up the

section entitled "Background" and largely set forth all the factual allegations upon which the

nondischargeability action is based.

Some of the allegations in the Adversary Complaint which the Debtors decided did not

require a response include, in relevant part:

> 8. on or about February 2, 2010, Afoluso applied for a Brand Safety Leader
> position at…Novartis.

> 9. Afoluso's resume and employment application indicated that she was at that
> time, and had been since November 2007, employed as a Senior Medical Director
> with Global Drug Safety & Surveillance, Inc. …. Afoluso named her supervisor at
> Global Drug and indicated that she was responsible for drug safety and pharma
> co-vigilance activities for assigned projects.

> 10. Afoluso signed her application certifying that the information provided in the
> application was correct and that any falsification was grounds for immediate
> dismissal.

> 11. Afoluso's representations concerning Global Drug were false, as Afoluso was
> not an employee of Global Drug, but rather was its owner and operator. The
> person she described as her supervisor did not exist.

> 12. Upon information and belief, Global Drug changed its name to LaRon
> Pharmaceutical, Inc. …, and LaRon was a specialty pharmaceutical company

13

which focused on acquiring/in-licensing, developing and commercializing of commercial pharmaceutical products in competition with Novartis.

13. Afoluso made the representations concerning her relationship to Global Drug/LaRon knowing them to be false, with the intent to deceive and fraudulently induce Novartis to rely on them by offering her employment.

14. Afoluso's representations were material to Novartis's decision to offer employment to, and in fact employ, Afoluso.

15. Novartis reasonably relied upon Afoluso's representations and deciding to offer employment to her…

16. Afoluso received a starting annual salary of $243,000, and she received an upfront starting bonus of $35,000 based upon representations made by her. As a direct and proximate result of Afoluso's fraudulent misrepresentation as set forth in detail above…Novartis sustained substantial damages.

19. Payment under the Annual Incentive Plan is subject to the employee's adherence to compliance with Novartis's policies and procedures, including, without limitation, the Novartis Conflict of Interest Policy and Code of Conduct.

21. Afoluso, through her fraudulent misrepresentations, engaged in behavior constituting egregious violations of Novartis policy, and multiple substantial and material violation [sic] of the company's Conflict of Interest policy, including, but not limited to, the following: (a) Afoluso not only owned LaRon at the time she applied to Novartis, but continued to own and operate LaRon during the entirety of her employment with Novartis. (b) Additionally, Afoluso owned and operated another company which performed drug safety operations, DanSeth Realty, LLC, also known as Ron Nuga, LLC… (c) In addition to these two competing entities, Afoluso individually provided consulting services in the field of drug safety, earning profits at a minimum of $41,783.00 in 2012. (d) Afoluso further actively pursue [sic] dual employment with a competitor of Novartis, through her company Ron Nuga, using the individual alias Ron Nuga and a false resume.

23. By the representations, acts and omissions to act as described fully above, Afoluso knowingly and intentionally made fraudulent misrepresentations to Novartis with respect to the Relocation Agreement and Annual Incentive Plan.

24. As a direct and proximate result of Afoluso's fraudulent misrepresentations set forth in detail above…Novartis incurred substantial damages.

25. Afoluso further agreed, and represented to Novartis, that no family member would act in any capacity for…any entity competing or doing business with Novartis.

26. Afoluso agreed that any potential conflict of interest with Novartis's business would be promptly disclosed.

27. At all times relevant defendant was competing with Novartis by her
ownership of LaRon and Ron Nuga, and engagement in individual consulting
opportunities.

29. Afoluso failed to disclose the conflict of interest and/or ownership of LaRon
and Ron Nuga and engagement in individual consulting opportunities.

On December 12, 2019, Novartis filed a motion for summary judgment and supporting

brief. Case No. 19-124 ECF 20-21. On December 16, 2019, Novartis served the summary

judgment motion and brief on the Debtors and filed a certificate of service.[4] *Id.* at ECF 22-24. To

support its statement of uncontested material facts, which largely mirrors the Adversary

Complaint, Novartis cites to portions of the Adversary Complaint and the Debtors' answer,

arguing that allegations the Debtors are deemed to have admitted by failing to fully respond to

the Adversary Complaint leave no genuine dispute that the Judgment is nondischargeable under

§ 523(a)(2)(A). Nov. Mot. Summ. J. ¶ 5; Nov. Br. in Supp. Mot. Summ. J. 3. *Compare* Nov. St.

Uncontested Material Facts ¶¶ 1-34 *to* Compl. ¶¶ 1-35. Novartis further offers the District Court

Opinions in support of its summary judgment motion, arguing that the findings contained therein

---

[4] It appears that in their response in opposition to Novartis's summary judgment motion, the Debtors make an argument to the effect that this Court should deny Novartis's summary judgment motion because it served the summary judgment motion and filed the accompanying certification of service subsequent to the three day grace period for filing certifications of service provided under Local Bankruptcy Rule 9014-4(a) ("Local Rule 9014"). Debtors' Cons. Resp. to Nov. Mot. for Summ. J. 5. Local Rule 9014-4(a) provides that:

> [a] person who serves an application, motion, objection, notice, or other document required to be served shall file a certificate of service promptly, but no later than the earlier of (i) 3 days after filing of the document, or (ii) if a hearing is scheduled, before the hearing.

Pursuant to Fed. R. Bankr. P. 9006(a)(1) ("Rule 9006"), which governs computing any time period specified in any local rule that does not otherwise specify a method of computing time:

> [w]hen the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Applying the rules for calculating time set forth in Rule 9006(a)(1), three days from the date Novartis's summary judgment motion was filed would have been December 15, 2019. However, the Court takes judicial notice of the fact that December 15, 2019 was a Sunday. As a result, pursuant to Rule 9006(a)(1)(C), the period for Novartis to timely file a certificate of service continued to run until the end of the next day that is not a Saturday, Sunday, or legal holiday, which was Monday, December 16, 2019. Accordingly, the certificate of service was timely filed in accordance with Local Rule 9014-4(a) and Rule 9006(a)(1).

also leave no genuine dispute that the Judgment is nondischargeable. Nov. Mot. Summ. J. Ex. A;

Nov. Br. in Supp. Mot. Summ. J. 3.

In response to a request for additional time to respond to Novartis's summary judgment

motion by the Debtors, the Court extended the response deadline from January 3, 2020 to

January 27, 2020. Case No. 19-124 ECF 23, 25, 26. On January 22, 2020, the Debtors filed a

response in opposition to Novartis's motion for summary judgment and their own cross motion

for summary judgment. *Id.* at ECF 29, 30. In their opposition to Novartis's motion for summary

judgment, the Debtors denied substantially all of the averments in Novartis's statement of

uncontested material facts aside from averments relating to certain minor background details. *Id.*

at ECF 29 Debtors' Resp. to Nov. St. of Uncontested Mat. Facts 6-15, ¶¶ 1-34.

In support of their cross motion for summary judgment, the Debtors offered their own

statement of "undisputed material facts," the majority of which directly contradict the factual

findings in the District Court Opinions, with citation to various exhibits, most of which pre-date

the District Court Action by two to three years and all of which, aside from the first exhibit

which is merely an excerpt from the Adversary Complaint, pre-date the First District Court

Opinion by at least a year.[5] Case No. 19-124 ECF 29 Def. St. of Undisputed Mat. Facts 18-27,

¶¶40-55; ECF 30 Def. Cert. in Supp. of Opp. to Nov. Summ. J. Mot., Cross Mot. Ex. 1-8.

---

[5]        Although not entirely clear, it appears the Debtors also argue that the Court should grant their cross motion
for summary judgment, deny Novartis's summary judgment motion, and dismiss the Adversary Complaint for
failure to state a claim under Fed. R. Civ. P. 12(b)(6) because the Adversary Complaint does not identify with
"specificity" which parts of the District Court Opinions support its § 523(a)(2)(A) claim. Case No. 19-124 ECF 29
Debtors' Br. in Opp. Nov. Mot. for Summ. J. 10-12. In making this argument, the Debtors complain "Novartis, by
the standards of a 523(a)(2)(A) course of action should have showed preponderance of evidence with high
specificity." *Id.* at 10.
        It is clear from the Adversary Complaint that Novartis relies at least in part on the District Court's findings
of fraud and the underlying facts supporting those findings to justify the relief sought under § 523(a)(2)(A). *See*
Compl. ¶¶ 32, 36, 39. However, there is no requirement that a plaintiff reference in an adversary complaint every
finding from a prior proceeding it relies on to prove its claim, especially when records from the prior proceeding are
attached to the complaint, so long as the complaint includes a short and plain statement regarding the basis for the
claim in accordance with Fed. R. of Civ. P. 8 and 9, made applicable to bankruptcy proceedings by Fed. R. Bankr. P.
7008 and 7009. While Fed. R. Civ. P. 9(b) requires a party to state with particularity the circumstances constituting

On February 20, 2020, Novartis submitted its response in opposition to the Debtors' cross

motion for summary judgment, objecting to the Debtors' factual assertions as largely

contradicting express findings contained in the District Court Opinions, and to their use of

additional exhibits to attempt to re-litigate the District Court Action. Case No. 19-124 ECF 35

Nov. Resp. to Debtors' Cross Mot. Summ. J. ¶¶ 7-9, 18-20.

## III.    DISCUSSION

Novartis argues that, because the District Court found Afoluso liable for New Jersey

common law fraud in Count I of the District Court Action and the elements of New Jersey

common law fraud mirror the elements necessary to establish nondischargeability pursuant to

§523(a)(2)(A), application of collateral estoppel principles shows there is no genuine dispute that

the Judgment is nondischargeable. Nov. Resp. to Debtors' Cross Mot. Summ. J. ¶¶ 9, 17, 29-33.

*See also* Nov. Br. in Supp. Mot. Summ. J. 3-5.

Additionally, Novartis contends that the District Court's findings that the Debtors

committed fraud and gave false testimony during the course of litigation in the District Court

Action eliminate any genuine dispute that the Judgment is nondischargeable. Nov. Resp. to

Debtors' Cross Mot. Summ. J. ¶¶ 12-14, 17, 24, 37-41, 43. Finally, Novartis avers that, by

failing to answer substantially all of the allegations in the Adversary Complaint, the Debtors are

deemed to have admitted all facts necessary for a determination of nondischargeability, including

that Afoluso knowingly and intentionally made fraudulent misrepresentations or deceptive

---

fraud or mistake when a pleading is based on allegations of fraud, the Adversary Complaint does that, stating with
specificity exactly what conduct Novartis alleges was fraudulent, even in the absence of an additional statement
identifying which District Court findings further support the claim. *See* Compl. ¶¶ 6-36. While it might be helpful to
have more specific citation to the District Court Opinions in the Adversary Complaint, it is not required and the
failure to do so alone does not render a complaint deficient. In any event, it is obvious which District Court findings
form the basis of Novartis's request for summary judgment and for the relief sought in the Adversary Complaint and
those findings are identified *infra* Pt. III. E-H. *See Viener v. Jacobs (In re Jacobs),* 381 B.R. 128, 144 n.28 (Bankr.
E.D. Pa. 2008).

omissions which harmed Novartis in connection with her employment application, the

Relocation Agreement, her eligibility for the AIP program, and various conflicts of interest,

thereby eliminating any genuine dispute that § 523(a)(2)(A) renders the Judgment

nondischargeable for actual fraud, false pretenses, or fraudulent misrepresentations.[6] Nov. Mot.

Summ. J. ¶ 5; Br. in Supp. Nov. Mot. Summ. J. 3-5. *See also* Compl./Ans. ¶¶ 11, 13, 15, 16, 21,

23, 24, 29.

---

[6]    In support of its summary judgment motion, Novartis makes the legal argument that summary judgment would be appropriate based upon either "false representations," "false pretenses," or "actual fraud." Nov. Br. in Supp. Mot. Summ. J. 3-5; Nov. Mot. for Summ. J. ¶ 37; Nov. Resp. to Debtors' Cross Mot. Summ. J. ¶¶ 23-33. It appears that the Debtors argue that any references to "false representations" or "false pretenses" in Novartis's summary judgment motion amount to improper amendments of the Adversary Complaint and must be stricken since ¶ 39 of the Adversary Complaint states under Count I that "[i]n this instance, the findings and conclusions of the United States District Court for the District of New Jersey constitute final and binding conclusions of law that Defendants engaged in 'actual fraud.'" Debtors' Br. in Opp. Nov. Mot. for Summ. J. 6-7; Debtors' Cons. Resp. to Nov. Mot. for Summ. J. 4-5. According to Debtors, Novartis must seek leave to amend the Adversary Complaint if it wishes to pursue nondischargeability of the Judgment on the basis of "false pretenses" or "false representations." Debtors' Br. in Opp. to Nov. Mot. for Summ. J. 6-7; Debtors' Cons. Resp. to Nov. Mot. for Summ. J. 4-5.

    However, the reference to "actual fraud" in ¶ 39 of the Adversary Complaint appears to simply acknowledge that the District Court found Afoluso liable for "fraud" in connection with Count I. Additionally, in the paragraph immediately above ¶ 39, the Adversary Complaint quotes § 523(a)(2)(A) in its entirety, including references to "false pretenses" and "false representations." Compl. ¶ 38. Accordingly, any additional references to "false pretenses" and "false representations" in Novartis's summary judgment motion do not meaningfully amend the Adversary Complaint given that it has already quoted the entirety of § 523(a)(2)(A). In fact, Novartis's statement of uncontested material facts is largely based almost verbatim on the same factual allegations underlying the Adversary Complaint. *Compare* Compl. ¶¶ 6-35 *to* Nov. St. Uncontested Mat. Facts ¶¶ 5-34. Thus, it is impossible to conceive of what purpose would be served by striking references to "false pretenses" and "false representations" in Novartis's summary judgment motion and having Novartis file an amended complaint just to add those phrases to ¶ 39 because, essentially, every factual allegation in the new complaint would remain the same as in the original Adversary Complaint and the addition of those phrases would not result in the addition of any new counts. At bottom, Novartis's summary judgment motion does no more than argue that its version of uncontested facts and the District Court Opinions support the legal conclusion that the Judgment satisfies the standards for nondischargeability under § 523(a)(2)(A) based either on "false pretenses," "false representations," or "actual fraud." This legal argument relates to the same cause of action the Adversary Complaint has always pleaded and is based on the same conduct identified therein. Thus, there is no basis to strike references to "false representations" or "false pretenses" from Novartis's summary judgment motion as those references alone do not change the nature of the Adversary Complaint.

    In any event, although the terms "false pretenses," "false representations," and "actual fraud" refer to different concepts, they are closely related, and each requires the plaintiff to prove some variation of the same essential elements. *Smith v. Johnson-Battle (In re Johnson-Battle)*, 599 B.R. 769, 782-83 (Bankr. D. N.J. 2019); *Coluccio v. Sevastakis (In re Sevastatkis)*, 591 B.R. 197, 202 (Bankr. D. N.J. 2018); *Carto v. Oakley*, 503 B.R. 407, 433 (Bankr. E.D. Pa. 2013). Accordingly, the Court finds that Novartis has not attempted to "sneak" new causes of action into its summary judgment motion or improperly amend its complaint by seeking summary judgment on the basis of "false pretenses" or "false representations" in addition to "actual fraud."

Debtors argue in their response and cross motion for summary judgment that there is no genuine dispute that the District Court made no findings regarding Afoluso's knowledge and intent in connection with Counts III, IV, and VIII, which are required for a debt to be declared nondischargeable under § 523(a)(2)(A); Counts III, IV, and VIII are mere breach of contract claims which do not arise to actionable fraud, misrepresentation, or false pretenses under §523(a)(2)(A); because the statements made in connection with Afoluso's job application and resume respect her financial condition, there is no genuine dispute that the portion of the Judgment attributable to Count I is not within the scope of § 523(a)(2)(A); and because the sanctions award against Adenekan only involved discovery misconduct, there is no genuine dispute that it is outside the scope of § 523(a)(2)(A).[7] Debtors' Br. in Opp. to Nov. Mot. for Summ. J. 7-8, 11-12; Debtors' Resp. to Nov. St. Uncontested Mat. Facts ¶ 29; Def. St. of Undisputed Mat. Facts ¶¶ 52, 53, 54.

Ultimately, the Court concludes that, because there is no genuine dispute that the statements supporting the District Court's finding of fraud in Count I relate to the Debtor's financial condition, the Court will grant summary judgment in the Debtors' favor for the portion of the Judgment attributable to Count I, as § 523(a)(2)(A) would not render that portion nondischargeable as a matter of law. This determination has no bearing on Novartis's ability to

---

[7] The Debtors also appear to argue that the chapter 7 trustee's report of no distribution and Novartis's failure to object to it establish that they are "honest debtors" entitled to a discharge of all their debts. Debtors' Br. in Opp. to Nov. Mot. for Summ. J. 13-16. The chapter 7 trustee's report of no distribution merely concludes that "there is no property available for distribution from the estate over and above that exempted by law" and that as a result the estate has been fully administered. Case No. 18-17260 ECF 58. This has no bearing whatsoever on whether creditors' debts are nondischargeable on the basis of prepetition misconduct. Furthermore, creditors are not required to object to a chapter 7 trustee's report in order to preserve their ability to obtain a nondischargeability determination of their particular debts and the Debtors point to no legal authority stating otherwise. Accordingly, that the chapter 7 trustee filed a report of no distribution and that Novartis did not object to it do not justify granting the Debtors' cross motion for summary judgment or denying Novartis's motion for summary judgment.

attempt to seek to amend the Adversary Complaint in accordance with Rule 15 to incorporate

any additional counts it may deem relevant, such as § 523(a)(2)(B).

However, there is no genuine dispute that the District Court's findings in support of

Counts III, IV, and VIII establish that Afoluso, in breaching the Relocation Agreement and

failing to disclose conflicts of interest in connection with the AIP and her external employment,

made false representations and deceptive omissions which promoted misleading understandings

of the status of her employment and which damaged Novartis. Therefore, the Court will grant

partial summary judgment in favor of Novartis in connection with the portions of the Judgment

attributable to Counts III, IV, and VIII for the foregoing elements. Nevertheless, because there

remains a genuine dispute regarding whether, in connection with Counts III, IV, and VIII,

Afoluso knowingly advanced a misleading understanding of her employment status through her

representations and omissions and whether she made those representations and omissions with

the intent and purpose of deceiving Novartis, summary judgment will be denied as to both those

elements in favor of further exploration at trial. Furthermore, a genuine dispute of material fact

remains over Novartis's reliance on Afoluso's representations in the Relocation Agreement for

Count III.

With respect to the portion of the Judgment attributable to the sanctions award against

Adenekan, because there is no evidence reflecting that he obtained any money, property, or

services as a result of his false testimony and discovery misconduct in the District Court Action,

there is no genuine dispute that § 523(a)(2)(A) would not render that portion of the Judgment

nondischargeable. Accordingly, summary judgment will be granted in the Debtors' favor as to

that portion of the Judgment attributable to sanctions against Adenekan. However, this

determination does not limit Novartis's ability to attempt to seek to amend the Adversary

Complaint pursuant to Rule 15 to add any potentially applicable counts, such as § 523(a)(6).

Finally, because the Court has not yet determined which portions of the Judgment will

ultimately be deemed nondischargeable and the sanctions award against Afoluso does not

independently satisfy the elements of a § 523(a)(2)(A) claim since there is no evidence that she

received any money, property, or services as a result of the fraud she committed in the District

Court Action, the Court denies summary judgment as to the sanctions award against Afoluso and

will revisit upon further exploration at trial once it determines the dischargeability of the primary

underlying debt. Additionally, Novartis retains the ability to attempt to seek any amendments to

the Adversary Complaint under Rule 15 that it may find appropriate.

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(a) ("Rule 56"), made applicable to bankruptcy proceedings

through Fed. R. Bankr. P. 7056, "the court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." On a motion for summary judgment, the court's role is not to weigh the evidence,

but to determine whether there is a disputed, material fact for resolution at trial. *Green v. Didio,*

607 B.R. 804, 808 (Bankr. E.D. Pa. 2019) (B.J. Frank). "A genuine issue of material fact is one

in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict

for the non-moving party." *Odom v. Philadelphia Parking Auth. (In re Odom),* 571 B.R. 687,

692 (Bankr. E.D. Pa. 2017) (B.J. Frank).

If the movant is the party with the burden of proof at trial, the movant "must produce

enough evidence to justify a directed verdict in its favor in order to meet its initial burden." *Id.* at

693 (citations omitted). If the movant is the defendant or the party without the burden of proof,

> the movant must demonstrate the absence of a genuine issue of material fact, but
> the movant is not required to support the motion with affidavits or other materials
> that negate the opponent's claim. Rather, the movant may assert that the party
> with the burden of proof has not come forward with evidence to support one or
> more elements of its claim. *Green,* 607 B.R. at 808 (citations omitted).

Once the movant satisfactorily meets its initial burden, the non-moving party must generally go

beyond the pleadings and counter with evidence designating specific facts showing that there is a

genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *DiSantis v. Morgan*

*Props. Payroll Servs., Inc.*, Civ. Action No. 09–6153, 2010 WL 3606267, at *4 (E.D. Pa. Sept.

16, 2010). Ultimately, in resolving a motion for summary judgment, the court must draw all

reasonable inferences in favor of the non-moving party. *In re Odom,* 571 B.R. at 692.

### B. Fed. R. Civ. P. 8

In support of its summary judgment motion, Novartis relies in large part on admissions it

believes the Debtors are deemed to have made by failing to adequately respond to allegations in

the Adversary Complaint. Pursuant to Fed. R. Civ. P. 8(b)(1)(B) ("Rule 8"), made applicable to

bankruptcy proceedings through Fed. R. Bankr. P. 7008, in responding to a pleading, a party

must admit or deny the allegations asserted against it by an opposing party. In fact, a denial must

fairly respond to the substance of the allegation. Rule 8(b)(2). A party that lacks knowledge of

information sufficient to form a belief about the truth of the allegation must so state and that

statement will have the effect of a denial. Rule 8(b)(5). However, pursuant to Rule 8(b)(6), "an

allegation – other than one relating to the amount of damages – is admitted if a responsive

pleading is required and the allegation is not denied."

Here, the Debtors' answer includes a statement that "items 6-35," which make up the

entire "Background" section of the Adversary Complaint, "are conclusory statements that do not

require a response." This is simply inaccurate. On the contrary, items 6-35 contain every factual

allegation in the entire Adversary Complaint and the vast majority of those allegations are

22

detailed and specific. Accordingly, by failing to admit or deny the allegations contained in items

6-35, the Debtors avoided responding to the factual content of the Adversary Complaint at all.

Debtors cite no legal authority justifying their evasive non-response.[8] Accordingly, pursuant to

Rule 8(b)(6), the Debtors are deemed to have admitted every factual allegation contained in

paragraphs 6-35.[9]

### C. Collateral Estoppel

Novartis also relies on findings the District Court made in connection with the District

Court Action in support of its summary judgment motion. It is well established that preclusion

principles apply in bankruptcy proceedings. *Murphy v. Snyder (In re Snyder),* 939 F.3d 92, 100

(2d Cir. 2019). Because the Judgment was rendered in a federal court, the Court must apply

federal principles of collateral estoppel to determine the Judgment's preclusive effect in this

---

[8] Remarkably, in their response to Novartis's statement of uncontested material facts, which is substantially similar to the Adversary Complaint, the Debtors do admit or deny each fact, showing that the Debtors were capable of responding appropriately to the Adversary Complaint in the first instance, but inexplicably and unjustifiably chose not to do so. *See* Debtors' Resp. to Nov. St. Uncontested Mat. Facts ¶¶ 5-34.

[9]     Although the Debtors' response to Novartis's summary judgment motion is fairly incoherent and difficult to follow, they appear to argue that Novartis's summary judgment motion should be denied because it is not backed by evidentiary records, depends solely on Novartis's Adversary Complaint, and does not back its statement of uncontested facts with citations to the record as required by the pre-trial order and Rule 56(c)(1)(A). Debtors' Br. in Opp. Nov. Mot. for Summ. J. 6, 10; Debtors' Cons. Resp. to Nov. Mot. for Summ. J. 3-4.

In relevant part, the pre-trial order provides "[a] motion for summary judgment shall include a separate statement of those material facts that the movant contends are not in dispute with supporting citations to the record. Failure to comply with this requirement shall be grounds for summary denial of the motion." Pre-Tr. Order 3 n.1. Relatedly, Rule 56(c)(1)(A) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…admissions, interrogatory answers, or other materials…"

Debtors are simply incorrect that Novartis's statement of uncontested material facts fails to cite to materials on the record and solely relies on the allegations in the Adversary Complaint. To the contrary, Novartis's statement of uncontested material facts does include citations to the record – the Debtors' deemed admissions which they made as a matter of law under Rule 8(b)(6) when they failed to respond to items 6-35 of the Adversary Complaint, as well as other admissions they made in their answer. *See* Nov. St. Uncontested Mat. Facts ¶¶ 1-34. Admissions are referenced in Rule 56(c)(1)(A) as an example of material on the record which can support a movant's assertion that a fact is undisputed. In fact, admissions may be used to prove elements of a § 523(a)(2)(A) claim. *Kriescher v. Gibson (In re Gibson),* 521 B.R. 645, 652 (Bankr. W.D. Wis. 2014).

Furthermore, Novartis's summary judgment motion also relies upon certain factual findings in the District Court Opinions to which this Court must give preclusive effect by virtue of collateral estoppel, as discussed in more detail *infra* Pt. III. C, E-H. Nov. Mot. Summ. J. Ex. A; Nov. Br. in Supp. Mot. Summ. J. 3. Accordingly, Novartis has offered material on the record in support of its statement of uncontested material facts and summary judgment motion.

proceeding. *In re Snyder,* 939 F.3d at 100; *Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210,

214 (3d Cir. 1997). Under federal law, collateral estoppel precludes the re-litigation of an issue

of fact or law determined in a prior action if the following conditions are satisfied: (1) an

identical issue was raised in a prior proceeding; (2) the issue sought to be precluded was actually

litigated and decided in the prior action; (3) the determination of the issue sought to be precluded

was essential to supporting a valid and final judgment on the merits in the prior proceeding; and

(4) the party against whom preclusion is asserted had a full and fair opportunity to litigate the

issue in the prior proceeding. *In re Snyder,* 939 F.3d at 100; *United States ex rel. Doe v. Heart*

*Sol., PC,* 923 F.3d 308, 316 (3d Cir. 2019); *Heine v. Comm'r of the Dep't of Cmty. Affairs,* 337

F. Supp. 3d 469, 482 (D. N.J. 2018).

In the context of dischargeability proceedings, collateral estoppel permits the court to

accept facts established by previous judgment as evidence of nondischargeability. *In re*

*Docteroff,* 133 F.3d at 215 (citing *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir. 1987)). Upon

application of collateral estoppel in a nondischargeability action, the Court must determine

whether a judgment entered in a prior proceeding and the accompanying underlying findings are

sufficient to render a debt nondischargeable. *Aiello v. Aiello (In re Aiello),* 533 B.R. 489, 494-95

(Bankr. W.D. Pa. 2015).

### D.  11 U.S.C. § 523(a)(2)(A)

In nondischargeability actions brought pursuant to § 523(a)(2)(A), the plaintiff bears the

burden of proving the elements necessary for a § 523(a)(2)(A) claim by a preponderance of the

evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991); *Oppenheimer & Co. v. Ricker (In re*

*Ricker),* 475 B.R. 445, 455 (Bankr. E.D. Pa. 2012). Section 523(a)(2)(A) provides that:

> a discharge…under this title does not discharge an individual debtor from any
> debt…for money, property, services, or an extension, renewal, or refinancing of
> credit, to the extent obtained by false pretenses, a false representation, or actual

fraud, other than a statement respecting the debtor's or an insider's financial
condition...

As a threshold matter, the plain language of § 523(a)(2)(A) requires that "something of value" be
transferred to the debtor to sustain a claim. *Fledderman v. Glunk (In re Glunk)*, 343 B.R. 754,
758 (Bankr. E.D. Pa. 2006). Once it is established that specific money or property has been
obtained by fraud, any debt arising therefrom is excepted from discharge. *Id.* "Frauds that do not
involve the transfer of money, property, services...are not included within this discharge
exception." *Symonies v. Sobol (In re Sobol)*, 545 B.R. 477, 492 (Bankr. M.D. Pa. 2016).

Ultimately, false representations, false pretenses, and actual fraud are distinct, yet related,
concepts which require plaintiffs to demonstrate similar elements to sustain a § 523(a)(2)(A)
claim. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586-87 (2016); *Smith v. Johnson-Battle
(In re Johnson-Battle),* 599 B.R. 769, 783 (Bankr. D. N.J. 2019); *Coluccio v. Sevastakis (In re
Sevastatkis),* 591 B.R. 197, 202 (Bankr. D. N.J. 2018); *Carto v. Oakley,* 503 B.R. 407, 433
(Bankr. E.D. Pa. 2013). A § 523(a)(2)(A) claim based on a false representation requires proof
that the debtor made a false or misleading affirmative misrepresentation with the intention and
purpose of deceiving the creditor. *Green,* 607 B.R. at 816. There are five elements comprising a
false representation claim under § 523(a)(2)(A): (1) the debtor made a false representation; (2)
which at the time of the representation, the debtor knew, or believed, was false; (3) the false
representation was made with the intent and purpose of deceiving the creditor; (4) the creditor
justifiably relied upon the representation; and (5) the creditor sustained damages as a proximate
result of the misrepresentation. *Green,* 607 B.R. at 816; *Jou v. Adalian (In re Adalian)*, 474 B.R.
150, 160 (Bankr. M.D. Pa. 2012).

While false representations require express statements, a false pretense "requires proof of
an implied misrepresentation promoted knowingly and willingly that creates a misleading

25

understanding of the transaction by the plaintiff." *LL Lifestyle, Inc. v. Vidal (In re Vidal)*, Bankr.

No. 10–14071, Adv. No. 10–0335, 2012 WL 3907847, at *15 (Bankr. E.D. Pa. Sept. 7, 2012)

(B.J. Fox). An omission or failure to disclose can constitute an implied misrepresentation for

purposes of § 523(a)(2)(A) where circumstances are such that an omission or failure to disclose

creates a false impression which is known to the debtor. *Id.* "A misrepresentation may exist

notwithstanding the fact that the debtor did not 'affirmatively state a misrepresentation or was

never asked to disclose pertinent facts.' Bankruptcy courts have overwhelmingly held that a

debtor's silence regarding material fact can constitute a false representation actionable under

section 523(a)(2)(A)." *Freedom Medical, Inc. v. Janssens (In re Janssens),* 449 B.R. 42, 76

(Bankr. D. Md. 2010) (citations omitted). *See also Lewandowski v. Moeller (In re Moeller),*

Bankr. No. 09–17417 (GMB), Adv. No. 11–1008 (GMB), 2014 WL 1315854, at *7 (Bankr. D.

N.J. March 31, 2014).

Some courts have determined that in order for a debt to be declared nondischargeable

based on false pretenses, plaintiffs must prove that: (1) the debtor impliedly made a false

representation or engaged in deceptive conduct; (2) at the time of the representation or conduct,

the debtor knew, or believed, the implied representation was false or the conduct was deceptive;

(3) the debtor acted with an intent and purpose of deceiving the creditor; (4) the creditor

justifiably relied upon the representation or conduct; and (5) the creditor sustained damage as a

proximate result of the misrepresentation or act. *Coluccio,* 591 B.R. at 202; *Johnnie's Rest. &

Hotel Serv. Inc. v. Witmer (In re Witmer),* 541 B.R. 769, 777 (Bankr. M.D. Pa. 2015); *In re

Ricker*, 475 B.R. at 457.

Other courts have articulated those same essential elements slightly differently, finding

that, to prove a § 523(a)(2)(A) claim based on false pretenses, the plaintiff must show that: "(1)

26

the [defendant] made an omission or implied misrepresentation; (2) promoted knowingly and

willingly by the defendant; (3) creating a contrived and misleading understanding of the

transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance

money...to the defendant." *Carto*, 503 B.R. at 432; *In re Vidal*, 2012 WL 3907847 at *16.

Finally, actual fraud consists of any "deceit, artifice, trick or design involving direct and

active operation of the mind, used to circumvent and cheat another – something said, done or

omitted with the design of perpetuating what is known to be a cheat or deception." *In re

Johnson-Battle,* 599 B.R. at 783. To except a debt from discharge for money, property, or

services obtained by actual fraud, a creditor must prove that a debtor took some action in

furtherance of his wrongful intent, that the fraudulent action enabled him to obtain money,

property, or services, and that the debt arose in the context of the fraudulent scheme. *Lepre v.

Milton (In re Milton),* 595 B.R. 699, 712 (Bankr. W.D. Pa. 2019).

### E.  District Court Action Count I – Fraud Related to Afoluso's Employment Application and Resume[10]

As the Supreme Court declared in *Lamar, Archer & Cofrin, LLP v. Appling,* 138 S. Ct.

1752 (2018), a statement about a single asset, not just about a debtor's overall financial status,

constitutes a "statement respecting the debtor's financial condition." 138 S. Ct. at 1757. Debts

for money, property, or services obtained by statements respecting a debtor's financial condition

do not fall within the scope of § 523(a)(2)(A). Rather, they fall within the scope of

---

[10] The analysis under § 523(a)(2)(A) must focus on each debt which is sought to be held nondischargeable, and each must be a debt for obtaining money, property, or services to the extent obtained by false pretenses, false representations, or fraud. *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 704 (Bankr. S.D. N.Y. 1998). Parts of a judgment relating to damages which "have nothing to do with plaintiff's losses" as a result of fraudulent conduct will not automatically be found nondischargeable solely on the basis that part of the judgment involved adjudication of a fraud claim. *Peters Broad. Eng'g, Inc. v. Kotsopoulos (In re Kotsopoulos)*, No. 10-14134, Proc. No. 10-1213, 2011 Bankr. LEXIS 3933, at *7 (Bankr. N.D. Ind. Aug. 19, 2011). Only portions of the judgment attributable to fraudulent misconduct will be deemed nondischargeable under § 523(a)(2)(A). *Id.* Accordingly, the Court assesses each portion of the Judgment independently to determine dischargeability and ensure that each portion satisfies the standards necessary for a § 523(a)(2)(A) claim.

§523(a)(2)(B). In addition, such statements respecting a debtor's financial condition must have been made in writing in order for the underlying debt to be held nondischargeable under §523(a)(2)(B).[11] Accordingly, debts for money, property, or services obtained by statements respecting a debtor's financial condition which are not in writing would be dischargeable even if the statements were false, as they would not fall within the scope of either § 523(a)(2)(A) or §523(a)(2)(B). *Id.* Statements regarding employment history and salaries have been considered statements respecting a debtor's financial condition. *See Fin. Servs. Vehicle Trust v. Barlaam (In re Barlaam),* Bankr. No. 1:11–bk–13387–GM, Adv. No. 1:11–ap–01402–GM, 2012 WL 3288725, at *6 (Bankr. C.D. Cal. 2012); *Free At Last Bail Bonds, Inc. v. Franklin-Graham (In re Franklin-Graham),* Bankr. No. 05–91520–MGD, Adv. No. 05–06585, 2008 WL 7842108, at *4 (Bankr. N.D. Ga. 2008).

Although collateral estoppel precludes re-litigation of the findings in the First District Court Opinion that Afoluso knowingly made material misrepresentations on her employment application to Novartis regarding her last job, fictious supervisors, and prior salaries with the intent and purpose of deceiving Novartis into hiring her, pursuant to *Lamar,* the false statements that Afoluso made on her employment application regarding her salaries and employment history relate to her financial condition, even though they do not relate to her overall financial status. Therefore, the Court cannot grant summary judgment in favor of Novartis on Count I because §523(a)(2)(A) specifically excludes from its scope debts for money, property, or services obtained by a false statement respecting a debtor's financial condition. Accordingly, the Court

---

[11] Section 523(a)(2)(B) provides:

a discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title…does not discharge an individual debtor from any debt…for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive…

must grant the Debtors' cross motion for summary judgment on Count I because there is no genuine dispute that § 523(a)(2)(A) does not render nondischargeable debts obtained by false statements relating to a debtor's financial condition.[12]

Such debts, as the Debtors point out in their opposition to Novartis's summary judgment motion, can only be considered under § 523(a)(2)(B). *See* Debtors' Br. in Opp. Nov. Mot. for Summ. J. 7-8. Here, because the statements Afoluso made regarding her salaries and employment history were in writing on her employment application and resume, a debt for money, property, or services obtained by those statements falls within the scope of §523(a)(2)(B). Accordingly, the determination that the portion of the Judgment attributable to Count I is not within the scope of § 523(a)(2)(A) is not intended to prejudice any rights Novartis may have by virtue of Rule 15 to seek any amendments to the Adversary Complaint that it may deem appropriate. Rule 15(a)(2) permits amendments to the complaint with the court's leave, which it must grant when justice so requires. Furthermore, Rule 15(b)(1)-(2) permits amendments to the complaint as late as during or after trial for issues tried by consent or, alternatively, with the court's leave, which it should freely permit when doing so will aid in presenting the merits.

## F. District Court Action Count III – Breach of Contract in Connection with the Relocation Agreement

Although the legal determination that Afoluso committed a breach of contract in connection with the Relocation Agreement alone does not establish fraud or misrepresentation

---

[12] Because the Court has granted the Debtors' cross motion for summary judgment in connection with the portion of the Judgment attributable to Count I on the basis that it does not meet the § 523(a)(2)(A) standards as a matter of law, it need not and does not consider the exhibits Debtors offer in support of their cross motion and in opposition to Novartis's summary judgment motion in connection with Count I. *See* Debtors' Resp. to Nov. St. Uncontested Mat. Facts ¶¶ 9-16; Def. St. of Undisputed Mat. Facts ¶¶ 40-51; Def. Cert. in Supp. of Opp. to Nov. Summ. J. Mot., Cross Mot. Ex. 2-6.

under § 523(a)(2)(A) and has no bearing upon this Court's determination as to whether the

portion of the Judgment attributable to Count III is nondischargeable, the factual basis upon

which Count III was determined supports partial summary judgment in favor of Novartis. *See*

*Coluccio,* 591 B.R. at 205-06; *Johnnie's Rest. & Hotel,* 541 B.R. at 777; *Strominger v. Giquinto*

*(In re Giquinto),* 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008); *Viener v. Jacobs (In re Jacobs),* 381

B.R. 128, 143-44 (Bankr. E.D. Pa. 2008).

The First District Court Opinion establishes that Afoluso's employment with Novartis

was predicated upon her relocating to a location closer to Novartis's offices in New Jersey, that

Afoluso represented that she intended to relocate, that she breached her Relocation Agreement

by not relocating, and that based on her representation, Novartis extended approximately

$26,000 to Afoluso to cover relocation costs. These factual findings satisfy at least three

elements necessary to support a nondischargeability determination under § 523(a)(2)(A) for false

representations, including that Afoluso made a representation[13] which turned out to be false and

which caused Novartis damages.[14] Accordingly, Afoluso is precluded from re-litigating these

factual findings because they were essential to the Judgment, are identical to findings this Court

would need to make to support a determination of nondischargeability under § 523(a)(2)(A), and

Afoluso had a full and fair opportunity to litigate them.[15] Therefore, the Court will grant partial

---

[13] The false representation at issue relates to Afoluso's intention to relocate rather than her financial condition. Therefore, the debt for money obtained by this false representation – the portion of the Judgment attributable to Count III – is within the scope of § 523(a)(2)(A) as opposed to § 523(a)(2)(B). Because the debt for money obtained by this false representation is within the scope of § 523(a)(2)(A), the representation does not have to be in writing for the debt to be nondischargeable.

[14] The threshold requirement that Afoluso received money, property, or services is also satisfied as she received approximately $26,000 based upon her false representation that she would relocate.

[15] Because Afoluso is precluded from re-litigating the foregoing factual findings made by the District Court, the Court declines to consider the exhibit she offers to attempt to challenge the District Court's findings in connection with Count III. *See* Def. St. Undisputed Mat. Facts ¶ 52; Def. Cert. in Supp. Opp. to Nov. Mot. for Summ. J., Cross Mot. Ex. 8.

summary judgment for the elements established by application of collateral estoppel to the First

District Court Opinion in connection with the portion of the Judgment attributable to Count III.

However, absent from the District Court Opinions are any express findings regarding

whether Afoluso knew her representation regarding her intention to relocate was false *at the time*

*she made it*, whether she purposely made that representation intending to deceive Novartis, and

whether it was justifiable for Novartis to rely upon that representation. Furthermore, her

admissions do not sufficiently address these issues for summary judgment purposes.[16] Therefore,

the Court will reserve these limited, disputed material issues for resolution at trial.[17]

### G.  District Court Action Count IV – Breach of Contract (AIP)

Although the legal determination that Afoluso committed a breach of her employment

contract in connection with the AIP does not establish fraud or misrepresentation under

---

[16] Although Afoluso failed to answer the complaint's allegation that she "knowingly and intentionally made fraudulent representations to Novartis with respect to the Relocation Agreement," failure to answer does not establish legal conclusions or conclusory allegations, especially in the absence of strong circumstantial factual support for the contention in the complaint. Compl. ¶ 23; *Luo v. Qiao Xing Universal Res.*, Civ. No. 12-0045, 2018 WL 283146, at *2 (D. V.I. Jan. 2, 2018); *Gov't Emples. Ins. Co. v. Vill. Med. Supply, Inc.*, 11-CV-2863 (RRM) (JO), 2014 U.S. Dist. LEXIS 37764, at *12-13, 15 (E.D. N.Y. Feb. 28, 2014); *Discover Bank v. Fuentes (In re Fuentes)*, 474 B.R. 497, 500-01 (Bankr. S.D. Tex. July 13, 2012). Aside from the above statement regarding Afoluso's state of mind in connection with the Relocation Agreement, the Adversary Complaint fails to otherwise mention or discuss the Relocation Agreement at all. Thus, this isolated statement is no more than a legal conclusion made without any additional underlying factual support or context which cannot establish Afoluso's knowledge and intent at the summary judgment stage when the Court is required to draw all reasonable inferences in her favor in the context of Novartis's summary judgment motion. *In re Odom*, 571 B.R. at 692. Especially when a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless *all* reasonable inferences defeat the claims of the opposing party. *FIA Card Servs., N.A. v. Wagner (In re Wagner)*, Bankr. No. 10–36900, Adv. No. 11–3020, 2012 WL 6737830, at *5 (Bankr. N.D. Ohio Dec. 28, 2012).

[17] Because the Court is required to find there is *no* genuine dispute of material fact in order to grant summary judgment, the Court finds it wise to hold off on making a definitive ruling particularly on Afoluso's state of mind in favor of developing a more fulsome record at trial. Rule 56(a). That said, because a debtor will rarely, if ever, admit that deception was his purpose, intent to deceive may be inferred from the totality of the surrounding facts and circumstances. *Starr v. Reynolds (In re Reynolds)*, 193 B.R. 195, 200 (D. N.J. 1996); *Fulton, N.A. v. Robbins (In re Robbins)*, 562 B.R. 83, 109 (Bankr. E.D. Pa. 2016); *N.J. DOL & Workforce Dev., Div. of Unemployment & Disability Ins. v. Ortiz (In re Ortiz)*, 514 B.R. 762, 768 (Bankr. D. N.J. 2014) (citing *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118–19 (3d Cir.1995)); *Giansante & Cobb, LLC v. Singh (In re Singh)*, 433 B.R. 139, 161 (Bankr. E.D. Pa. 2010); *In re Giquinto*, 388 B.R. at 166. Accordingly, at trial, when the Court is no longer required to draw all reasonable inferences in favor of a particular party or find that there is no genuine dispute over a material factual issue to rule in a party's favor, the Court may infer Afoluso's state of mind from findings set forth in the District Court Opinions and Afoluso's admissions.

§523(a)(2)(A) and has no bearing upon this Court's determination as to whether the portion of

the Judgment attributable to Count IV is nondischargeable, the factual basis upon which Count

IV was predicated supports partial summary judgment in favor of Novartis. *See Coluccio,* 591

B.R. at 205-06; *Johnnie's Rest. & Hotel,* 541 B.R. at 777; *In re Giquinto,* 388 B.R. at 166; *In re*

*Jacobs,* 381 B.R. at 143-44.

The District Court Opinions establish that Afoluso signed the Employee Agreement, in

which she agreed to devote her full business loyalty to Novartis, without disclosing her

significant conflicts of interest, such as her ownership of a competing pharmaceutical company.

As a result, the District Court concluded that Afoluso was already in violation of the Employee

Agreement and policies that governed it, like the Conflicts Policy and AIP, at the outset of her

employment, creating a misleading impression that she was eligible for bonuses under the AIP

when, in fact, she never was at any time during her tenure with Novartis due to her conflicts of

interest.[18] Accordingly, the District Court Opinions establish that Novartis suffered a loss when it

extended bonuses to Afoluso that she was never eligible for under the AIP.[19]

Additionally, the District Court Opinions establish that, by failing to disclose later

conflicts of interest which developed due to her external employment with other competing drug

safety companies, Afoluso created the misleading impression that she remained in compliance

with all policies necessary for continued eligibility for the AIP, including the Conflicts Policy.[20]

---

[18] In fact, Afoluso is also deemed to have admitted that
> Afoluso...engaged in behavior constituting egregious violations of Novartis policy, and multiple
> substantial and material violation [sic] of the company's Conflict of Interest policy, including, but
> not limited to, the following: (a) Afoluso not only owned LaRon at the time she applied to
> Novartis, but continued to own and operate LaRon during the entirety of her employment with
> Novartis... Compl./Ans. ¶ 21.

[19] Furthermore, Afoluso is deemed to have admitted that as a direct and proximate result of representations related to
her eligibility for the AIP, Novartis incurred substantial losses. Compl./Ans. ¶ 24.

[20] Afoluso is also deemed to have admitted that
> Afoluso...engaged in behavior constituting egregious violations of Novartis policy, and multiple
> substantial and material violation [sic] of the company's Conflict of Interest policy, including, but

Thus the District Court determined Novartis suffered a loss as a result of this misleading impression by continuing to pay bonuses to Afoluso she was not entitled to receive.[21]

The foregoing factual findings made by the District Court satisfy several elements necessary for a successful § 523(a)(2)(A) claim based on false pretenses, including that Afoluso made omissions/implied misrepresentations regarding her conflicts of interest and compliance with Novartis policies[22] which created a misleading understanding of her employment transaction in terms of her eligibility for AIP bonuses, harming Novartis. Accordingly, Afoluso is precluded from re-litigating those District Court findings which satisfy elements of a false pretenses nondischargeability claim because they were essential to the Judgment, are identical to findings this Court would need to make to support a determination of nondischargeability under § 523(a)(2)(A), and Afoluso had a full and fair opportunity to litigate them.[23] Therefore, the Court will grant partial summary judgment for the elements established by the application of collateral estoppel to the District Court Opinions in connection with the portion of the Judgment attributable to Count IV.

---

not limited to, the following:... (c)... Afoluso individually provided consulting services in the field of drug safety, earning profits at a minimum of $41,783.00 in 2012; (d) Afoluso further actively pursue [sic] dual employment with a competitor of Novartis, through her company Ron Nuga, using the individual alias Ron Nuga and a false resume. Compl./Ans. ¶ 21.

[21] Furthermore, Afoluso is deemed to have admitted that as a direct and proximate result of representations related to her eligibility for the AIP, Novartis incurred substantial losses. Compl./Ans. ¶ 24.

[22] These omissions/implied representations relate to violations of company policy and conflicts of interest rather than Afoluso's financial condition. Therefore, debt for money obtained by these omissions/implied representations – the portion of the Judgment attributable to Count IV – does not implicate § 523(a)(2)(B) and is within the scope of §523(a)(2)(A). Because debt for money obtained by these omissions/implied representations is within the scope of §523(a)(2)(A), the omissions/implied representations do not have to have been made in the context of a writing in order for the debt to be nondischargeable. In any event, an omission or failure to disclose does not constitute a "statement" as the term is used in § 523(a)(2)(A) or § 523(a)(2)(B). *Oregon v. Mcharo (In re Mcharo)*, 611 B.R. 657, 662 (9th Cir. B.A.P. 2020).

[23] Because Afoluso is precluded from re-litigating the foregoing factual findings made by the District Court, the Court declines to consider her exhibit offered to challenge the District Court's factual finding that she was not eligible for AIP bonuses. *See* Debtors' Resp. to Nov. St. Uncontested Mat. Facts ¶¶ 16-17; Def. Cert. in Supp. Opp. to Nov. Mot. for Summ. J., Cross Mot. Ex. 7.

However, absent from the District Court Opinions are express findings regarding (1) whether Afoluso actually knew her failure to disclose her conflicts of interest in violation of the Conflicts Policy created a misleading impression that she was eligible for the AIP when she was not and (2) whether she purposely failed to disclose her conflicts intending to deceive Novartis into giving her bonuses. Furthermore, her admissions do not sufficiently address these issues for summary judgment purposes.[24] Therefore, the Court will reserve these limited, disputed material issues for resolution at trial.[25]

## H. Count VIII – Breach of Duty of Loyalty and Conflicts Policy

Although the legal determination that Afoluso breached her duty of loyalty by breaching the Conflicts Policy does not establish fraud or misrepresentation under § 523(a)(2)(A) and has no bearing upon this Court's determination as to whether the portion of the Judgment attributable to Count VIII is nondischargeable pursuant to § 523(a)(2)(A), the factual basis upon which Count VIII was predicated supports partial summary judgment in favor of Novartis. *See*

---

[24] The statement in the Adversary Complaint that Afoluso "knowingly and intentionally made fraudulent misrepresentations to Novartis with respect to the…Annual Incentive Plan" is no more than a boilerplate legal conclusion. Compl. ¶ 23. As previously discussed, a failure to answer does not establish legal conclusions or conclusory allegations. *Luo*, 2018 WL 283146, at *2; *Gov't Emples. Ins. Co.,* 2014 U.S. Dist. LEXIS 37764, at *12-13, 15; *In re Fuentes,* 474 B.R. at 500-01. Furthermore, Afoluso's deemed admissions do not allow the Court at this time to conclude there is *no* genuine dispute regarding Afoluso's state of mind in failing to disclose conflicts which made her ineligible for the AIP, especially when the Court is required to draw all reasonable inferences in Afoluso's favor in the context of Novartis's summary judgment motion. *In re Odom,* 571 B.R. at 692. While the Court may genuinely believe the most likely inference from Afoluso's admissions is that she knowingly and intentionally failed to disclose her conflicts in order to receive AIP bonuses, it cannot conclude for summary judgment purposes that it is the *only* possible inference, as it must in order to grant summary judgment in Novartis's favor. *Id.* Ultimately, when a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless *all* reasonable inferences defeat the claims of the opposing party. *In re Wagner*, 2012 WL 6737830, at *5. Thus, the Court finds it more appropriate to further explore Afoluso's state of mind at trial.

[25] Again, because the Court must find there is *no* genuine dispute of material fact in order to grant summary judgment, the Court finds it wise to hold off on making a definitive ruling on Afoluso's state of mind in favor of developing a more fulsome record at trial. Rule 56(a). That said, because a debtor will rarely, if ever, admit that deception was his purpose, intent to deceive may be inferred from the totality of the surrounding facts and circumstances. *In re Reynolds,* 193 B.R. at 200; *In re Robbins,* 562 B.R. at 109; *In re Ortiz,* 514 B.R. at 768 (citing *In re Cohn,* 54 F.3d at 1118–19); *In re Singh,* 433 B.R. at 161; *In re Giquinto,* 388 B.R. at 166. Accordingly, come trial, when the Court is no longer required to draw all reasonable inferences in favor of a particular party or find that there is no genuine dispute over material facts in order to rule in a party's favor, the Court may infer Afoluso's state of mind from findings set forth in the District Court Opinions and Afoluso's admissions.

*Coluccio,* 591 B.R. at 205-06; *Johnnie's Rest. & Hotel,* 541 B.R. at 777; *In re Giquinto,* 388

B.R. at 166; *In re Jacobs,* 381 B.R. at 143-44.

The District Court Opinions establish that Afoluso did not disclose significant conflicts to

Novartis, specifically her competing positions at other drug safety companies which she applied

for and secured during her employment,[26] creating a misleading understanding that Afoluso was

performing full-time work for Novartis when she was not. As a result, the District Court

concluded that based upon the false belief that Afoluso was performing full-time work for

Novartis, Novartis continued to pay her as a full-time employee and was harmed from paying her

more than her services warranted.[27] *See Rimrock Design, Inc. v. Morris (In re Morris),* Case No.

3:16–bk–2229–PMG, Adv. No. 3:16–ap–235–PMG, 2018 WL 2165767, at *3 (Bankr. M.D. Fla.

May 8, 2018); *In re Janssens,* 449 B.R. at 76.

The foregoing factual findings by the District Court satisfy several elements necessary for

a successful § 523(a)(2)(A) claim based on false pretenses, including that Afoluso made

omissions which created a misleading understanding of the extent of her work for Novartis[28] and

harmed Novartis. Accordingly, Afoluso is precluded from re-litigating those District Court

findings which satisfy elements of a false pretenses nondischargeability claim because they were

essential to the District Court Judgment, are identical to findings this Court would need to make

to support a determination of nondischargeability under § 523(a)(2)(A), and Afoluso had a full

---

[26] In fact, she is deemed to have admitted this as well. Compl./Ans. ¶¶ 27, 29.
[27] She is further deemed to have admitted that as a direct and proximate result of Afoluso's fraudulent misrepresentations related to her external employment positions, Novartis incurred substantial damages. Compl./Ans. ¶¶ 21, 24.
[28] These omissions/implied representations relate to conflicts of interest and Afoluso's work performance rather than her financial condition. Therefore, debt for money obtained by these omissions/implied representations – the portion of the Judgment attributable to Count VIII – does not implicate § 523(a)(2)(B) and is within the scope of §523(a)(2)(A). Because debt for money obtained by these omissions/implied representations is within the scope of §523(a)(2)(A), the omissions/implied representations do not have to have been made in the context of a writing in order for the debt to be nondischargeable. In any event, an omission or failure to disclose does not constitute a "statement" as the term is used in § 523(a)(2)(A) or § 523(a)(2)(B). *In re Mcharo,* 611 B.R. at 662.

and fair opportunity to litigate them. Therefore, the Court will grant partial summary judgment

for the elements established by the application of collateral estoppel to the District Court

Opinions in connection with the portion of the Judgment attributable to Count VIII.

However, absent from the District Court Opinions are any express findings regarding (1)

whether Afoluso actually knew she was creating a misleading impression by failing to disclose

her external employment and (2) whether she purposely failed to disclose her external

employment intending to deceive Novartis.[29] Furthermore, Afoluso's admissions do not

sufficiently address these issues for summary judgment purposes.[30] Therefore, these limited,

disputed material issues are reserved for resolution at trial.[31]

### I.  Sanctions Against Afoluso

Given that the sanctions award against Afoluso for her litigation abuses does not

independently satisfy the § 523(a)(2)(A) elements and that the dischargeability of the primary

---

[29] While Afoluso's conduct in pursuing and failing to disclose her external employment was characterized in the First District Court Opinion as violating the duty of good faith and fair dealing present in every contract by depriving Novartis of the bargain it made with her, the District Court did not specifically address her state of mind in failing to disclose her external employment or why she failed to do so.

[30] Afoluso's deemed admissions, including that she agreed to disclose any conflicts of interest promptly, do not explain why she did not disclose her external employment or her state of mind in not doing so, and do not allow the Court at this time to conclude there is *no* genuine dispute regarding her state of mind in failing to disclose her external employment. Compl./Ans. ¶ 26. This is especially the case on summary judgment when the Court is required to draw all reasonable inferences in Afoluso's favor in the context of Novartis's summary judgment motion. *In re Odom,* 571 B.R. at 692. While the Court may genuinely believe the most likely inference from Afoluso's admissions is that she knowingly and intentionally failed to disclose her conflicts in order to prevent Novartis from discovering her other positions, it cannot conclude there is the *only* possible inference, as it must in order to grant summary judgment in Novartis's favor. *Id.* Ultimately, when a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless *all* reasonable inferences defeat the claims of the opposing party. *In re Wagner,* 2012 WL 6737830, at *5. Thus, the Court finds it more appropriate to further explore Afoluso's state of mind at trial.

[31] Again, because the Court is required to find there is *no* genuine dispute of material fact in order to grant summary judgment, the Court finds it wise to hold off on making a definitive ruling on Afoluso's state of mind in favor of developing a more fulsome record at trial. Rule 56(a). That said, because a debtor will rarely, if ever, admit that deception was his purpose, intent to deceive may be inferred from the totality of the surrounding facts and circumstances. *In re Reynolds,* 193 B.R. at 200; *In re Robbins,* 562 B.R. at 109; *In re Ortiz,* 514 B.R. at 768 (citing *In re Cohn,* 54 F.3d at 1118–19); *In re Singh,* 433 B.R. at 161; *In re Giquinto,* 388 B.R. at 166. Accordingly, come trial, when the Court is no longer required to draw all reasonable inferences in favor of a particular party or find there are no genuine disputes over any material facts to rule in a party's favor, the Court may infer Afoluso's state of mind from findings set forth in the District Court Opinions and Afoluso's admissions.

debt related to the Novartis Counterclaims has not yet been conclusively determined, the Court cannot at this stage find no genuine dispute exists as to the dischargeability of the sanctions award.

By way of background, in 1998, the Supreme Court in *Cohen v. De La Cruz,* 523 U.S. 213 (1998) held that "§ 523(a)(2)(A) prevents the discharge of all liability arising from fraud, and that an award of treble damages therefore falls within the scope of the exception," finding "[o]nce it is established that specific money or property has been obtained by fraud…'any debt' arising therefrom is excepted from discharge," including ancillary debts, like punitive damages or attorneys' fees, traceable to the fraudulent conduct. 523 U.S. at 214, 218-19. In *Cohen,* a judgment had been entered against a debtor in favor of his former tenants for violations of the New Jersey Consumer Fraud Act ("NJCFA"), which authorizes treble damages. *Id.* at 215-16. Because the conduct which violated the NJCFA rendered the primary debt nondischargeable pursuant to § 523(a)(2)(A), the treble damages award authorized by the NJCFA was also deemed nondischargeable as arising from the fraudulent conduct. *Id.* at 222-23.

Therefore, generally, attorneys' fees and interest accompanying a nondischargeable primary award of compensatory damages are likewise nondischargeable. *Gober v. Terra+Corp. (In re Gober),* 100 F.3d 1195, 1208 (5th Cir. 1996). Furthermore, ancillary awards, like attorneys' fees, will be deemed nondischargeable when they are inseparable from the underlying conduct which gave rise to the nondischargeable primary debt or are issued as a direct result of the wrongful conduct rendering the primary debt nondischargeable. *Dunn v. Campbell (In re Campbell),* Bankr. No. 12–35021(1)(7), Adv. No. 13–3007, 2014 WL 1491290, at *5 (Bankr. W.D. Ky. Apr. 15, 2014); *KV Pharm. Co. v. Harland (In re Harland),* 235 B.R. 769, 782 (Bankr. E.D. Pa. 1999). Obligations arising from circumstances and issues distinct from the fraudulent

conduct, though, will not necessarily be considered nondischargeable even if a primary award of

compensatory damages underlying a judgment is. *See Blanchette v. Damiano (In re Damiano)*,

Bankr. No. 10–20695 (ASD), Adv. No. 10–02087, 2014 WL 2337964, at *5 (Bankr. D. Conn.

May 28, 2014).

      Accordingly, the sanctions award against Afoluso will only be nondischargeable if there

is no genuine dispute either that conduct underlying the sanctions award independently meets the

§ 523(a)(2)(A) elements or that the sanctions award stems directly from, is traceable to, arose

from, results directly from, or is inseparable from conduct which initially gave rise to a

nondischargeable primary debt.

      With regard to the § 523(a)(2)(A) elements, the District Court made no findings

regarding what money, property, or services Afoluso received as a result of her fraudulent

discovery misconduct and she did not otherwise admit to receiving money, property, or services

as a result of that conduct in her answer. As previously mentioned, for a debt to fall within the

§523(a)(2)(A) exception to discharge, money, property, or services, or an extension, renewal or

refinancing of credit must actually have been obtained by false pretenses, representations, or

fraud. *Ivory v. Barbe (In re Barbe)*, 466 B.R. 737, 749 (Bankr. W.D. Pa. 2012). This requires

more than an assertion that there was fraudulent conduct which caused some type of damages. *In

re Glunk*, 343 B.R. at 758. In fact, "[f]rauds that do not involve the transfer of money, property,

services…are not included within this discharge exception." *In re Sobol*, 545 B.R. at 492.

Because there is no evidence that Afoluso received money, property, or services as a result of her

fraudulent discovery conduct, summary judgment cannot be granted as to the sanctions award on

this basis.

Additionally, because the Court has not yet determined whether any portion of the Judgment is nondischargeable, it cannot yet determine if ancillary debts are nondischargeable. Accordingly, because there remain genuine issues of material fact in connection with the dischargeability of the sanctions award against Afoluso, the Court cannot grant summary judgment to either party on this award at this time. However, the denial of summary judgment in connection with Afoluso's sanctions award does not prejudice any rights Novartis may have to attempt to seek to amend the Adversary Complaint pursuant to Rule 15(a)(2) to include any additional counts it may deem appropriate.

### J.  Sanctions Against Adenekan

Although the District Court Opinion found that Adenekan gave false testimony during the course of discovery in the District Court Action, there is no genuine dispute that § 523(a)(2)(A) would not render the $23,714 sanctions award issued in connection with that conduct nondischargeable. None of the evidence offered in support of Novartis's summary judgment motion addresses what money, property, or services Adenekan obtained as a result of the false representations he made during discovery in the District Court Action or as a result of his failure to obey court orders to produce requested documents. As previously mentioned, for a debt to fall within the § 523(a)(2)(A) exception to discharge, money, property, or services, or an extension, renewal or refinancing of credit must actually have been obtained by false pretenses, representations, or fraud. *In re Barbe,* 466 B.R. at 749. "Frauds that do not involve the transfer of money, property, services…are not included within this discharge exception." *In re Sobol*, 545 B.R. at 492. Accordingly, the sanctions award against Adenekan does not satisfy the threshold requirement for nondischargeability under § 523(a)(2)(A) that he obtain "something of value" by his fraudulent actions. *See In re Glunk*, 343 B.R. at 758.

39

Therefore, because there is no genuine dispute that Adenekan did not receive money,

property, or services as a result of his misconduct sanctioned by the District Court as required for

a debt to be considered nondischargeable under § 523(a)(2)(A), this Court must deny Novartis's

summary judgment motion[32] and grant the Debtors' cross motion for summary judgment for the

sanctions against Adenekan.

However, as Novartis now appears to recognize in its response to the Debtors' cross

motion for summary judgment, fraud judgments in cases in which the defendant did not obtain

money, property, or services are generally more appropriately governed by § 523(a)(6), which

renders debts for willful and malicious injury nondischargeable. Nov. Resp. to Debtors' Cross

Mot. Summ. J. 16 n.45 ("The District Court's finding of Adenekan's conduct would also warrant

non-dischargeability under § 523(a)(6) as it would certainly constitute a 'willful and malicious

injury by the debtor to another entity…'"). *See also Nunnery v. Rountree (In re Rountree),* 330

B.R. 166, 172-73 (E.D. Va. 2004) (citing *Grogan v. Garner,* 498 U.S. 279, 282 (1991)). The

Court's determination that § 523(a)(2)(A) does not render the sanctions award against Adenekan

nondischargeable is not intended to and does not prejudice any rights Novartis may have to

attempt to seek to amend the Adversary Complaint pursuant to Rule 15(a)(2) to include a count

under § 523(a)(6), or any other amendments it may wish to seek.

## IV.    CONCLUSION

In sum, for the reasons discussed, the Court grants the Debtors' cross motion for

summary judgment in connection with the portion of the Judgment attributable to Count I and

---

[32] Additionally, because Adenekan's discovery misconduct would be entirely distinct from Afoluso's conduct underlying the Novartis Counterclaims, which establishes the basis for the primary debt in this case, the sanctions award against Adenekan would not be considered a debt which arises from the primary debt, even if parts of it are found nondischargeable.

the sanctions award against Adenekan.[33] While it grants Novartis's summary judgment motion

over the Debtors' cross motion in part for the portions of the Judgment attributable to Counts III,

IV, and VIII, it denies both parties' summary judgment motions in part for those counts as well

in order to further explore Afoluso's intent and state of mind in connection with the conduct

described in Counts III, IV, and VIII and Novartis's reliance on Afoluso's representations

particularly in connection with Count III. Finally, because the sanctions award against Afoluso

does not independently meet the requirements for a determination of nondischargeability under

§523(a)(2)(A) and the Court has not yet determined the nondischargeability of the portions of the

Judgment attributable to the Novartis Counterclaims, it must deny both parties' summary

judgment motions in connection with Afoluso's sanctions award at this time.[34]

---

[33] The Court has nevertheless rejected the Debtors' request for damages for pain and emotional distress stemming from what they deem a meritless adversary proceeding brought solely to harass them. Debtors' Br. in Opp. Nov. Mot. for Summ. J. 14-17. The Debtors' confusing response leaves the legal basis for their request for "damages" unclear aside from vague references to "Pennsylvania law" and Fed. R. Civ. P. 11 ("Rule 11"). *Id.* at 16-17. First, there is no basis to conclude that this adversary proceeding was brought for an improper purpose solely to harass the Debtors. Novartis is entitled to seek to establish the nondischargeability of its debt so that it may continue to pursue execution upon the Judgment post-bankruptcy. In any event, the Court cannot issue "damages" against Novartis in the absence of a counterclaim to which Novartis would have the opportunity to file an answer. To the extent that the Debtors' request is grounded in Rule 11, made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 9011 ("Rule 9011"), motions for sanctions under Rule 9011 must be made separately from other motions and may not be presented to the Court unless within 21 days after service of the motion, the offending paper is not withdrawn or appropriately corrected. Rule 9011(c)(1)(A). Here, the request for sanctions was not made separately from the Debtors' response in opposition to Novartis's summary judgment motion and the Debtors have not followed the 21-day rule. *See* Case No. 19-124 ECF 29. Accordingly, the Court cannot grant sanctions on the basis of Rule 9011.
[34]    In so concluding, the Court rejects the Debtors' argument that Rule 56(e)(2) mandates that the Court grant their cross motion for summary judgment in its entirety and deem each fact advanced in their statement of undisputed facts "admitted" based upon the fact that Novartis did not specifically address line by line their statement of undisputed facts in its response. Def. Sur Reply ¶¶ B.2(a), 3, C.1(a). First, Rule 56(e) in its entirety provides
　　[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court *may*: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order. (emphasis added).
Accordingly, the Court is not *required* to grant a motion for summary judgment or consider a statement of facts undisputed based solely upon the fact that a respondent did not specifically address line by line each fact advanced in a statement of facts. Furthermore, it is clear to the Court that Novartis in effect made an omnibus objection to the Debtors' statement of undisputed facts based upon the findings contained in the District Court Opinions, which contradict most if not all of the Debtors' "undisputed" facts. *See* Nov. Resp. to Debtors' Cross Mot. Summ. J. ¶¶ 7-9, 13, 17-20; Def. St. of Undisputed Mat. Facts ¶¶ 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54 (criticizing various aspects of District Court Opinions based upon evidence and "facts" purportedly overlooked by the District Court).

41

Date: March 24, 2020

Honorable Ashely M. Chan
United States Bankruptcy Judge

---

Relatedly, it appears, though it is not entirely clear, that the Debtors may be inviting the Court to reconsider the Judgment on the basis of Fed. R. Civ. P. 60(b)(2) ("Rule 60"), arguing that "either the New Jersey Court or any other competent court of jurisdiction will entertain a Rule 60(b)(2) motion to consider the new evidence which directly and manifestly challenges the previous opinion in the interest of justice as in this case because the facts are stubbornly undeniable." Def. Sur Reply ¶ 6(a). Rule 60(b)(2), however, would not entitle Debtors to have the Judgment reviewed. First, any Rule 60(b)(2) motion must have been brought within a year of the proceeding. Rule 60(c)(1). The District Court issued the First District Court Opinion in August 2016 and the Second District Court Opinion determining the Judgment amount in June 2017. Accordingly, well over a year has gone by since those decisions and the Judgment were issued. Second, even if this request had been timely, this Court still could not reconsider the District Court Opinions based on Rule 60(b)(2) because there has been no indication that any of the "new evidence" offered could not have been discovered with reasonable diligence during the District Court proceedings. *See* Rule 60(b)(2). In fact, as mentioned, almost every single exhibit offered in support of the cross motion pre-dates the District Court Action by about two to three years and all exhibits pre-date the First District Court Opinion except for exhibit one, which is merely an excerpt of the Adversary Complaint. Therefore, the Court finds that Rule 60(b)(2) does not provide a basis for reconsidering the findings made in connection with the District Court Opinions.

42